# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DEVIN MOORE, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

No. 25-1461

Filed: September 3, 2026

## OPINION AND ORDER

Plaintiffs are correctional officers at Federal Correctional Institution Fort Dix ("FCI Fort Dix" or "Institution") who seek compensation under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, for time spent engaged in pre- and post-shift activities. The Government filed a partial Motion to Dismiss, contending that Plaintiffs fail to state a claim under the FLSA with respect to the time Plaintiffs spend undergoing a security screening and walking through a controlled entrance, known as a sally port, to enter the secured confines of the Institution before their shifts begin. Also before the Court are Plaintiffs' two Motions for Leave to File Notice of Supplemental Authority. For the reasons below, the Court **DENIES** the Government's Motion to Dismiss and **GRANTS** Plaintiffs' Motions for Leave to File Notice of Supplemental Authority.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Under the FLSA, qualifying employers are required to compensate at one and one-half times the employees' regular rate all non-exempt employees who work in excess of 40 hours per week. 29 U.S.C. § 207; *see also* 5 C.F.R. § 551.501 (2026). The Portal-to-Portal Act of 1947, 29 U.S.C. § 251 *et seq.*, later amended the FLSA to clarify that employees are not entitled to compensation for "activities which are preliminary to or postliminary to [the employees'] principal

activity or activities." 29 U.S.C. § 254(a)(2). A principal activity is one the employees were "employed to perform." *Id.* § 254(a)(1). As interpreted by the United States Supreme Court, employees may be entitled to compensation under the FLSA for "[a]ctivities performed either before or after the regular work shift . . . if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed and are not specifically excluded." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). If an employer fails to comply with the FLSA, its employees may sue to recover unpaid overtime wages. 29 U.S.C. § 216(b).

**B. Factual Background**

FCI Fort Dix is a low security correctional institution in New Jersey housing more than 4,000 male inmates. Pls.' Compl. ¶¶ 1, 9, ECF No. 1. "The Institution is staffed 24 hours per day, 365 days per year by correctional officers, including Plaintiffs."[1] *Id.* ¶ 10. Plaintiffs characterize their principal activity as "maintaining the safety and security of the Institution, inmates, and staff," which they perform by "searching for and eliminating contraband (including searching themselves at the staff-dedicated screening site), maintaining constant vigilance to monitor for contraband and to ensure that nothing out of the ordinary is occurring, and immediately addressing any issues[,] including[] correcting inmate behavior and interacting with inmates." *Id.*

Posts at the Institution requiring 24-hour staffing are separated into three consecutive eight-hour shifts performed by different officers. *Id.* ¶ 12. For these eight-hour shifts, there is no paid overlap, such that officers are required to be at their assigned post with all equipment and pertinent

[1] Due to staff shortages, non-custody workers—such as those assigned to food services, unit counselors, and correctional systems staff—may be augmented and assigned to correctional officer posts. ECF No. 1 ¶ 35. Plaintiffs allege that when these non-custody workers are assigned to correctional officer posts, they perform the same uncompensated activities as correctional officers. *Id.* ¶ 36. Thus, these non-custody workers, to the extent they are augmented and assigned to correctional officer posts, are included as plaintiffs in this matter. *See id.*

post information by the scheduled start of their shift. *Id.* ¶ 13. Plaintiffs allege that when they are assigned to a shift on a 24-hour post, they perform uncompensated overtime work both before and after their scheduled paid shift. *Id.* ¶ 14. According to Plaintiffs, this uncompensated time totals at least 15–30 minutes per shift. *Id.* ¶ 15.

Plaintiffs specifically seek compensation for time spent: (1) undergoing a mandatory staff security screening in the front lobby, *id.* ¶ 19; (2) collecting and donning duty belts and other mandatory equipment, *id.* ¶ 20; (3) passing through the Control Center sally port and flipping their accountability chit, *id.* ¶ 22; (4) walking to their assigned posts within the Institution, *id.* ¶ 23; (5) exchanging information and equipment with the outgoing officer, *id.* ¶ 25; and (6) performing these same activities—exchanging information and equipment, walking to the Control Center, and exiting the prison—at the end of their shifts, *id.* ¶¶ 31–32.

Plaintiffs describe the security screening process as requiring officers to check themselves for contraband before passing through an upright metal detector. *Id.* ¶ 19. According to Plaintiffs, this screening is essential to prevent weapons and other contraband from entering the Institution. *Id.* Plaintiffs must then collect and don their duty belts on the other side of the metal detector, as the belts contain metal chains and chits that would trigger the security alarm. *Id.* ¶ 20. Plaintiffs next pass through the sally port, a secure entryway where they are identified and cleared by the Control Center officer and "flip their accountability chit signifying that they are on duty and inside the secured confines of the Institution." *Id.* ¶ 22. Once they pass through the sally port, Plaintiffs are locked within the secured confines of the Institution along with the inmates. *Id.* Accordingly, as Plaintiffs walk to their posts, they must supervise and monitor inmates, including observing and correcting inmate behavior, responding to inmate questions, checking for security breaches, searching for contraband, running to locations where body alarms sound, and responding to

emergencies as they arise. *Id.* ¶ 23. Plaintiffs note that upon entering the Institution they are, at all times, in uniform and identifiable as correctional officers. *Id.* Once Plaintiffs reach their posts, they inspect, account for, and exchange equipment such as radios, oleoresin capsicum spray (*i.e.*, pepper spray), keys, and handcuffs with the outgoing officer. *Id.* ¶ 25. Plaintiffs then discuss all necessary information with the outgoing officer before starting their shift. *Id.* Once their shift has ended, Plaintiffs exchange information and equipment with the incoming officer and walk through the Institution to exit at the Control Center, during which time they continue to be responsible for supervising and monitoring inmates, observing and correcting inmate behavior, looking for contraband, and responding to emergencies. *Id.* ¶¶ 31–32.

### C. Procedural Background

Plaintiffs filed their Complaint on September 2, 2025, seeking unpaid compensation they are allegedly owed, plus interest. *Id.* at 13. The suit was brought as a collective action by Devin Moore, a correctional officer at FCI Fort Dix, who sued on behalf of himself and other similarly situated employees. *Id.* ¶ 1.

On December 12, 2025, the Government filed a partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for failure to state a claim. Gov't's Mot. to Dismiss Part of Compl., ECF No. 10. According to the Government, Plaintiffs are not entitled to compensation under the FLSA for the time they spend clearing the security screening and passing through the sally port prior to their shift, as such activities are neither the principal activities Plaintiffs are employed to perform nor integral and indispensable to those principal activities. *Id.* at 6. At this stage, the Government does not challenge Plaintiffs' claim for compensation with regard to the other pre-shift activities alleged in the Complaint—*i.e.*, Plaintiffs' donning of duty belts and other equipment, the walk to their posts, and their exchange

of information and equipment with the outgoing officer—nor does the Government challenge Plaintiffs' claim for compensation with regard to their various post-shift activities.

Plaintiffs filed their response on January 9, 2026, arguing that clearing the security screening and passing through the sally port are principal activities because both are essential to ensuring the safety and security of the inmates, staff, and Institution. Pls.' Opp'n to Gov't's Mot. to Dismiss Part of Compl. at 19–25 (security screening), 30–33 (sally port), ECF No. 11. Plaintiffs additionally claim that passing through the sally port and flipping their accountability chit is compensable, at a minimum, as part of their continuous workday because the Government does not challenge their claim to compensation for time spent donning their duty belts, a principal activity that precedes the officers' passing through the sally port. *Id.* at 25–30. In the alternative, Plaintiffs request that the Court defer ruling on the Government's Motion to Dismiss until after discovery, as further factual development is necessary and a partial dismissal would not narrow discovery. *Id.* at 13–15. The Government filed its reply on January 23, 2026, reiterating its arguments for partial dismissal and contending that the continuous workday rule does not apply in the federal sector. *See* Reply in Supp. of Gov't's Mot. to Dismiss Part of Compl. at 5–6, ECF No. 12. The Court held oral argument on June 18, 2026. *See* Min. Entry, June 18, 2026. Accordingly, the Motion to Dismiss is fully briefed and ripe for disposition.

After the parties' briefing but before oral argument, Plaintiffs filed two Motions for Leave to File Notice of Supplemental Authority. *See* ECF Nos. 13, 14. Plaintiffs' first motion, filed on March 10, 2026, directs the Court's attention to *Hodge v. North Carolina Department of Adult Correction*, No. 5:19-cv-478-BO, 2026 WL 579933 (E.D.N.C. Mar. 2, 2026), a case that reviewed North Carolina correctional officers' claims to overtime pay under the FLSA and found that the officers' principal activity was maintaining the safety and security of the institution. ECF No. 13

at 1–2; *Hodge*, 2026 WL 579933, at *2. Plaintiffs' second motion, filed on March 19, 2026, points the Court to *Stroup v. United States*, 180 Fed. Cl. 346 (2026), a recent Court of Federal Claims case that denied a similar motion to dismiss, holding that the plaintiff-correctional officers sufficiently stated a claim under the FLSA for time spent clearing a security screening and passing through a sally port. ECF No. 14 at 2–3; *Stroup*, 180 Fed. Cl. at 353–54. The Government filed its Response to Plaintiffs' Notices of Supplemental Authority on April 2, 2026, arguing that (1) *Hodge* is irrelevant, as it did not involve federal correctional officers undergoing a security screening and clearing a sally port, ECF No. 15 at 1, and (2) *Stroup* erred in several respects, and thus the Court should not follow it, *id.* at 1–5. Plaintiffs filed their reply on April 7, 2026, arguing that the Government failed to explain why the Court should not consider *Hodge* and *Stroup* in ruling on the pending Motion to Dismiss. Pls.' Reply in Supp. of Mots. for Leave to File Notice of Suppl. Auth. at 1, ECF No. 16.

## II. STANDARD OF REVIEW

The Court may dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." RCFC 12(b)(6). To avoid dismissal under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. When deciding a RCFC 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). In making its decision, the Court

may consider the complaint itself, exhibits attached to the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 114 (2010) (quoting *Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 322 (2007)), *aff'd*, 656 F.3d 1306 (Fed. Cir. 2011).

## III. DISCUSSION

Plaintiffs have sufficiently stated a claim for relief under the FLSA with regard to the activities challenged by the Government. As for the time Plaintiffs spend undergoing the security screening, the Court finds that Plaintiffs' Complaint plausibly establishes at the pleading stage that the security screening is integral and indispensable to Plaintiffs' principal activities, though not a principal activity itself. As for the time Plaintiffs spend passing through the sally port and flipping an accountability chit, the Court finds that Plaintiffs have plausibly alleged entitlement to compensation for this time as well, since employers are required to compensate their employees for all walking time that falls between the employees' first principal activity and last principal activity of the workday. To the extent they are instructive, the Court considers the cases cited in Plaintiffs' Notices of Supplemental Authority, as well as the Government's responses to those cases.

### A. Plaintiffs Sufficiently Set Forth Their Principal Activities.

As discussed, Plaintiffs are only entitled to compensation under the FLSA for their principal activities and activities that are integral and indispensable to such principal activities. *See* 29 U.S.C. § 254(a)(1)–(2). Plaintiffs allege that their principal activity is "maintaining the safety and security of the Institution, inmates, and staff." ECF No. 1 ¶ 10. The Government, however, claims that "[m]aintaining safety and security . . . is not a principal activity," but rather

"the aspirational goal of the principal activities that plaintiffs are employed to perform." ECF No. 10 at 12. The Court finds this dispute to be inconsequential.[2]

Although "maintaining safety and security" alone may be an overbroad description of Plaintiffs' principal activities, Plaintiffs have also provided the Court with examples of more discrete, specific activities they perform in order to ensure the safety and security of the Institution. *See* ECF No. 1 ¶ 10 (alleging that Plaintiffs' responsibilities include "searching for and eliminating contraband (including searching themselves at the staff-dedicated screening site), maintaining constant vigilance to monitor for contraband and to ensure that nothing out of the ordinary is occurring, and immediately addressing any issues including[] correcting inmate behavior and interacting with inmates"). Courts have found similar descriptions of correctional officers' principal activities sufficient. *See Adegbite v. United States*, 156 Fed. Cl. 495, 505 (2021) (finding that "providing 'security' . . . is a sufficient description" of the plaintiffs' principal activities because the plaintiffs provide specific activities "in elucidating the 'security' [they] provide"); *Alkire v. United States*, 158 Fed. Cl. 380, 390 (2022) ("Given the detail in Plaintiffs' Complaint, there is no reason to penalize Plaintiffs for using a general catch-all as shorthand for the variety of activities they mention."); *Stroup*, 180 Fed. Cl. at 352 (dismissing the Government's argument that

[2] In its reply, the Government appears to read Plaintiffs' Complaint as expecting compensation for every activity nebulously related to safety and security. *See* ECF No. 12 at 11 (arguing that "any time that correctional officers spend locking their personal vehicle in the prison parking lot, making sure their shoes are tied, putting out cigarettes, or a number of other activities . . . are not compensable simply because one can connect those activities in some theoretical sense to 'safety and security'"). The Government urges the Court to instead focus on the activities it has specifically challenged in deciding its Motion to Dismiss. *See id.* at 14 ("The issue in this case is about the legally untenable arguments advanced by [P]laintiffs in making a claim under the FLSA for the two pre-shift activities."). The Government makes too much of Plaintiffs' alleged principal activity of "maintaining safety and security"—Plaintiffs are clearly seeking compensation for discrete activities, and, as the Government challenges two of those activities, they will be the focus of the Court's ruling on the Motion to Dismiss.

maintaining security is merely an "aspirational goal" because "a principal activity can also describe principal duties in the aggregate and include the numerous activities they are employed to perform"); *Hodge*, 2026 WL 579933, at *2 ("It can fairly be said that a correctional officer's principal job responsibility is to supervise offenders and maintain the safety and security of offenders and others inside the facility."). Accordingly, these activities are sufficiently specific such that the Court does not take issue with Plaintiffs' use of the phrase "maintaining safety and security" as a way to summarily describe Plaintiffs' principal activities.

### B. Plaintiffs Sufficiently State a Claim for Compensation Under the FLSA for Time Spent Undergoing the Security Screening.

The Court finds that Plaintiffs have sufficiently pled a claim for compensation with regard to time spent undergoing the security screening.[3] As alleged by Plaintiffs, they are responsible for ensuring a contraband-free environment and accordingly must continuously monitor themselves and others to prevent contraband from entering the Institution. *See* ECF No. 1 ¶ 10. Although not a principal activity itself, at the pleading stage, the Court finds it plausible that undergoing the security screening is integral and indispensable to Plaintiffs' principal activity of maintaining the safety and security of FCI Fort Dix.

[3] As an initial matter, the Court agrees with the Government that Plaintiffs misstate the pleading standard by claiming that the Court "should not dismiss a complaint for failure to state a claim unless it is ***beyond doubt*** that the plaintiff can prove ***no set of facts*** which would entitle him to relief." ECF No. 11 at 16 (emphases in original) (quoting *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001)). As the Government correctly points out, *see* ECF No. 12 at 9–10, the "no set of facts" standard derived from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), is outdated, as the Supreme Court in *Twombly* clarified that plaintiffs must do more to sufficiently state a claim. *See Twombly*, 550 U.S. at 563 (stating that *Conley*'s "no set of facts" language does not set forth "the minimum standard of adequate pleading to govern a complaint's survival" and is instead "best forgotten"); *see also Alkire*, 158 Fed. Cl. at 389 n.10 (similarly noting that the plaintiffs incorrectly relied on the outdated *Conley* standard by citing *Sommers Oil*). Nonetheless, the Court finds that Plaintiffs have sufficiently stated a claim under the *Twombly*/*Iqbal* plausibility standard.

1. Plaintiffs Have Not Plausibly Alleged that Undergoing Security Screening Is a Principal Activity Because It Is Not the Work Plaintiffs Were Employed to Perform.

Under the FLSA, a principal activity is defined as an activity that the employee was employed to perform. 29 U.S.C. § 254(a)(1). Though Plaintiffs contend that "[u]ndergoing a pre-shift security screening . . . is compensable as it is the 'productive work' that the Plaintiffs are employed to perform—*i.e.*, their principal activity of ensuring the safety and security of the inmates, the staff, the Institution, and the public," ECF No. 11 at 19, their arguments in support of that claim largely indicate that the security screening is at most integral and indispensable to Plaintiffs' principal activities, rather than a principal activity itself. *See, e.g.*, *id.* (claiming that security screening at a prison is "*directly tied to*" correctional officers' duty to ensure safety and security by controlling contraband (emphasis added)); *id.* at 20 ("[K]eeping contraband out is part of the Plaintiffs' principal activities" and the "security screening is . . . an essential contraband check[.]"). To the extent that Plaintiffs' arguments can be read as contending that undergoing the security screening is plausibly a principal activity itself, the Court is unconvinced.

Plaintiffs were not employed to undergo security screenings, *see* ECF No. 10 at 11, and although Plaintiffs claim their principal activity is maintaining safety and security, defining their principal activity in such a fashion does not mean that everything that furthers that aim is the work Plaintiffs were employed to perform. *Cf. Alkire*, 158 Fed. Cl. at 391 (accepting the plaintiffs' claim that they were employed to maintain prison security but still finding that undergoing security screening is not the work the plaintiffs were employed to perform); *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014) (determining that the security screening at issue was not the workers' principal activity because the employer "did not employ its workers to undergo security screenings"). The security screening may be an important aspect of maintaining safety and security at the Institution, but that would be reason to deem it an "integral and indispensable"

activity, rather than a principal activity itself. For the purpose of compensation under the FLSA, however, such a distinction is ultimately immaterial, as employees are entitled to compensation for both their principal activities and the activities that are integral and indispensable to those principal activities. *See Integrity Staffing*, 574 U.S. at 33.

2. Plaintiffs Have Plausibly Alleged that Undergoing the Security Screening Is Integral and Indispensable to Plaintiffs' Principal Activity of Controlling Contraband In Order to Maintain the Safety and Security of FCI Fort Dix.

Although undergoing the security screening is not a principal activity, Plaintiffs have sufficiently pled that the security screening is integral and indispensable to Plaintiffs' principal activity of ensuring the safety and security of the Institution, as the security screening is plausibly essential for the officers to maintain a contraband-free environment.

An integral and indispensable activity is one that is "an intrinsic element of [the employee's principal activities] and one with which the employee cannot dispense if he is to perform those activities." *Id.* at 35. Such integral and indispensable activities are treated as part and parcel of the employee's principal activities and thus are compensable under the FLSA. *Id.* at 33. "To meet [the integral and indispensable] test, it is not enough that a given activity is required by the employer or done for the employer's benefit." *Alkire*, 158 Fed. Cl. at 389. Rather, the employee must show that the activity is "integral and indispensable . . . to the productive work that the employee is *employed to perform*." *Integrity Staffing*, 574 U.S. at 36 (emphasis in original).

Here, the Government contends that the security screening is not integral to Plaintiffs' principal activities because "*being searched* for contraband is distinct from *searching* for contraband." ECF No. 10 at 14–15 (emphases in original) (citing *Medrano v. United States*, 159 Fed. Cl. 537, 545 (2022)). According to the Government, it is insufficient that the security screening serves a similar purpose as Plaintiffs' principal activity of searching for contraband, as a shared purpose does not make one activity integral and indispensable to another. *See id.* at 15–

16. The Government also argues that the security screening is not indispensable to Plaintiffs' principal activities because "[n]othing suggests that plaintiffs' ability to perform their work would be impaired if they were not screened on any given day, compared to if they were screened." *Id.* at 16. The Government instead claims that the safety of the Institution "depends on whether employees follow policy or introduce contraband, not on whether they are screened." *Id.* Thus, as long as the officers do not introduce contraband, the Government contends that FCI Fort Dix could eliminate the security screenings without impacting Plaintiffs' principal activities. *Id.* at 17.

As support, the Government cites *Integrity Staffing*, a FLSA case in which the Supreme Court held that warehouse employees were not entitled to compensation for time spent passing through a security screening aimed at preventing employee theft. 574 U.S. at 35. In *Integrity Staffing*, the Supreme Court reasoned that the warehouse workers were employed to retrieve and package products, and undergoing a screening to prevent theft was neither intrinsic nor indispensable to that work. *Id.* Because the warehouse workers "could skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired," time spent undergoing the screening was not compensable overtime. *Id.* at 38 (Sotomayor, J., concurring).

Though the Government contends that the same is true here, the Court disagrees that Plaintiffs' allegations do not meet the pleading standard. As this Court has previously held, security screenings at a federal prison are more closely related to the principal activities of correctional officers than theft screenings are to the principal activities of warehouse employees. *Alvarez v. United States*, No. 20-1533C, 2021 WL 6163405, at *6 (Fed. Cl. Dec. 30, 2021) (finding that security screenings in a prison "are not as far removed from Plaintiffs' alleged principal activities as was the case in *Integrity Staffing*"); *see also Alexander v. United States*, 156 Fed. Cl.

512, 525 (2021) (noting that "there is a clear distinction between what is integral and indispensable for warehouse workers, and what is integral and indispensable for prison guards"); *Stroup*, 180 Fed. Cl. at 353 (noting that other courts denying similar motions to dismiss in FLSA cases "have recognized the specialized role of security workers"); ECF No. 11 at 20 (Plaintiffs "begin ensuring that contraband is not entered into the Institution" at the security screening). Thus, unlike *Integrity Staffing*, it is not as apparent from the allegations pled that Plaintiffs "could skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired." 574 U.S. at 38 (Sotomayor, J., concurring). Instead, accepting Plaintiffs' allegations as true—as the Court must at this stage—it appears at least plausible that the officers would not be able to safely and effectively ensure the prison maintains a contraband-free environment absent the security screenings. *See Alexander*, 156 Fed. Cl. at 525 (holding at the dismissal stage that "the court is not convinced . . . that the security screenings for personnel and for persons who work at a facility which houses more than 4,300 inmates, including some who are violent offenders, should be discounted" as not integral and indispensable); *see also* ECF No. 10 at 14 (acknowledging that the security screening ensures that officers "enter the prison 'clean'").

As alleged in their Complaint, Plaintiffs are tasked with ensuring the safety and security of the Institution by, among other means, controlling contraband. ECF No. 1 ¶ 10. Specifically, Plaintiffs must continuously search for contraband and eliminate it where found. *Id.* Though the Government argues that the Institution could dispense with the screening as long as Plaintiffs follow prison rules and do not introduce contraband, *see* ECF No. 10 at 16–17, the Court finds that qualification to be significant. The security screening allegedly protects against not only officers who intentionally violate prison policy by introducing contraband, but also against the inadvertent introduction of contraband. Plaintiffs have plausibly alleged that the introduction of contraband

to the Institution, including via inadvertent means, would prevent them from safely and effectively performing their principal activities. ECF No. 1 ¶¶ 10, 19; *see also Integrity Staffing*, 574 U.S. at 38 (Sotomayor, J., concurring) (noting that the security screenings did not promote the safety and effectiveness of the workers' principal activities). Of course, at the merits stage, Plaintiffs must prove their allegations. And following discovery, the Government may be able to show that Plaintiffs have not met their burden to prove that the security screening is integral and indispensable to the officers' principal activities—but the Government has not demonstrated as much based on the Complaint alone, accepting Plaintiffs' allegations as true. *See Baytos v. United States*, No. 21-1085C, 2022 WL 598742, at *7 (Fed. Cl. Feb. 28, 2022) ("If discovery shows that Plaintiffs could perform their principal duties effectively without the security screenings, the Government may well prevail on summary judgment or at trial on that basis. But it cannot prevail now.").

As for the Government's argument that being screened, in contrast to screening others, is not compensable work, the Court finds such a distinction immaterial. It is true that the officers conducting the security screening seem to be engaged in a principal activity, as screening for contraband is the type of work correctional officers are employed to perform. Yet that does not necessarily mean that Plaintiffs' act of undergoing the screening cannot also be compensable as an integral and indispensable activity because the FLSA does not distinguish between active and passive work. *See Stroup*, 180 Fed. Cl. at 354 ("[E]ven passive activities can be considered compensable work when they constitute tasks the person is employed to perform."); *Aguilar v. Mgmt. & Training Corp.*, 948 F.3d 1270, 1278 n.6 (10th Cir. 2020) ("Both 'searching for' and 'being searched for' contraband involve keeping contraband out of the prison and maintaining a secure prison environment."); *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("[A]n

employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen."). Thus, the mere fact that the officer on the other side of the screening is being compensated for his time does not signify to the Court that Plaintiffs cannot show entitlement to compensation as well.

In drawing this distinction between searching and being searched, the Government emphasizes that "Plaintiffs can search for contraband even if they themselves are not screened." ECF No. 10 at 14–15 (quoting *Medrano*, 159 Fed. Cl. at 545); *id.* at 16 ("Nothing suggests that [P]laintiffs' ability to perform their work would be impaired if they were not screened on any given day, compared to if they were screened."). At this stage in the litigation, however, the Court cannot definitively make such a conclusion. Drawing all reasonable inferences in favor of Plaintiffs, *United Pac. Ins.*, 464 F.3d at 1327–28, it is at least plausible that Plaintiffs' efforts to search inmates for contraband and perform other principal activities, like responding to emergencies, would be ineffective and potentially dangerous if they themselves had contraband. *See* ECF No. 1 ¶¶ 9, 10, 19 (noting that FCI Fort Dix houses inmates convicted of federal crimes, including violent offenders, and that Plaintiffs are responsible for ensuring these inmates do not possess contraband, a task they could not perform without the screenings, which help to guarantee a contraband-free environment); *see also Aguilar*, 948 F.3d at 1279 (emphasizing that the inadvertent or intentional introduction of weapons or contraband into the prison would prevent an officer from safely and effectively maintaining custody and discipline of inmates). Ultimately, as this Court has previously noted, "[w]hether an activity is compensable under the FLSA often comes down to the particular job at issue and the particular facts of each case." *Adair v. United States*, No. 20-1148C, 2021 WL 6163407, at *6 (Fed. Cl. Dec. 30, 2021). After reviewing Plaintiffs' allegations, the Court finds that they satisfy the pleading standard and that discovery is

warranted before the Court can conclusively determine whether the security screening is in fact integral and indispensable to Plaintiffs' principal activities as correctional officers.

Additionally, on balance, the majority of the caselaw favors denial of the Government's motion. *See Stroup*, 180 Fed. Cl. at 352–54; *Adair*, 2021 WL 6163407, at *5–6; *Adegbite*, 156 Fed. Cl. at 506–07; *Alexander*, 156 Fed. Cl. at 524–26; *Alvarez*, 2021 WL 6163405, at *5–6; *Baytos*, 2022 WL 598742, at *6–7.[4] Indeed, in 2021, this Court denied two motions to dismiss filed by the Government in similar FLSA cases, holding that the plaintiff-correctional officers plausibly alleged entitlement to compensation for time spent undergoing security screening. *See Adair*, 2021 WL 6163407, at *5–6; *Alvarez*, 2021 WL 6163405, at *5–6. In the following years, there has not been a significant shift in the caselaw such that the Court can hold that security screenings at correctional facilities are, as a matter of law, non-compensable under the FLSA. Therefore, the Court rejects the Government's Motion to Dismiss Plaintiffs' claim seeking compensation for the time spent undergoing the security screening.

### C. Because the Continuous Workday Rule Applies in the Federal Sector, Plaintiffs Sufficiently State a Claim to Compensation Under the FLSA for Time Spent Passing Through the Sally Port and Flipping an Accountability Chit.

The parties dispute whether passing through the sally port and flipping an accountability chit is itself a principal activity or integral and indispensable to Plaintiffs' principal activities. Though the Court issues no opinion as to whether this activity is individually compensable,

[4] Some courts have granted motions to dismiss similar security-screening claims. *See Medrano*, 159 Fed. Cl. at 545–46 (undergoing a security screening is not an integral and indispensable activity because correctional officers "can search for contraband even if they themselves are not screened" and because "it is not the *screening* that makes it possible for [the officers] to do their jobs, but following prison rules that forbid contraband" (emphasis in original)); *Alkire*, 158 Fed. Cl. at 391–92 (same); *Lewis v. MHM Health Profs., LLC*, 696 F.Supp.3d 707, 716–18 (E.D. Mo. 2023) (applying *Medrano* in the context of prison healthcare workers seeking compensation for time spent undergoing security screening). For the reasons already discussed, however, the Court finds that dismissal is not warranted in the case at hand.

Plaintiffs have nonetheless stated a sufficient claim to compensation because Supreme Court precedent dictates that the continuous workday rule applies and Plaintiffs have plausibly alleged that they enter the sally port after their workday has commenced.

Under the continuous workday rule, employers must compensate employees for all time between the beginning of their first compensable activity and their last compensable activity of the workday. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005); *see also* 29 U.S.C. § 254(a)(2) (excluding from compensation preliminary or postliminary activities "which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities"); 29 C.F.R. § 790.6(b) (2026) (Department of Labor ("DOL") regulation defining "workday" as: "the period between the commencement and completion on the same workday of an employee's principal activity or activities"). Here, the Government's motion does not challenge Plaintiffs' FLSA claim with regard to the time the officers spend donning their duty belts, the step that occurs immediately prior to the officers' passing through the sally port. *See* ECF No. 1 ¶ 22. Accordingly, assuming that Plaintiffs succeed in their claim for compensation, Plaintiffs' donning of their duty belts would start their continuous workday such that Plaintiffs would be entitled to compensation for the time they spend passing through the sally port and flipping their accountability chit.

The Government argues that Plaintiffs cannot rely on the continuous workday rule because it has been "rejected by this Court," ECF No. 10 at 18, and "does not apply to federal employees in the same way that it applies to other workers from the private sector," ECF No. 12 at 21. The Government cites an Office of Personnel Management ("OPM") regulation that purportedly rejects the continuous workday rule for federal employees, *id.*, as it dictates that: "Time spent in preliminary or postliminary activities is excluded from hours of work and is not compensable, even

if it occurs between periods of activity that are compensable as hours of work." 5 C.F.R. § 551.412(b) (2026). The Government highlights the distinction between this OPM regulation and the DOL regulation, ECF No. 12 at 21, as OPM—not DOL—administers the FLSA for federal employees. *See* 29 U.S.C. § 204(a), (f) (assigning administration of the FLSA to DOL for private sector employees and OPM for federal sector employees). Thus, the Government argues that *Alvarez* and its continuous workday holding do not dictate the compensability of Plaintiffs' FLSA claim, which is instead governed by OPM's formulation of the rule.

Plaintiffs cite *Alvarez*, 546 U.S. at 37, and *Bridges v. United States*, 54 F.4th 703, 706–07 (Fed. Cir. 2022), as support for the applicability of the continuous workday rule in the federal sector. According to Plaintiffs, *Alvarez* held that any walking time that takes place after an employee's first principal activity and before the end of his last principal activity is compensable, ECF No. 11 at 30; and *Bridges*, contrary to the Government's characterization, *see* ECF No. 10 at 18–19, affirmed the applicability of the continuous workday rule in the federal sector, ECF No. 11 at 28–29. As further explained below, the Court agrees with Plaintiffs—the Supreme Court's decision in *Alvarez* establishes that the continuous workday rule is derived from the FLSA itself, a holding that was not undermined by *Bridges* and which applies to federal employees regardless of how one interprets the OPM regulation cited by the Government.

1. <u>The Supreme Court's Holding in *Alvarez* Dictates That the Continuous Workday Rule Is Based in the FLSA and Thus Applies in the Federal Sector.</u>

In *Alvarez*, the Supreme Court determined that workers at a meat processing plant were entitled to compensation for the time spent walking from the locker room to the production floor, as it was subsequent to the workers' first principal activity—donning their protective gear—and the FLSA mandates compensation for time spent walking if it falls between an employee's first principal activity and last principal activity. 546 U.S. at 37. Because the plaintiffs were private

sector employees, DOL's regulations applied. *See id.* at 28–29. Though *Alvarez* noted that the continuous workday rule was adopted in a DOL regulation defining "workday," the Court based its holding in the FLSA itself and used the DOL regulation merely as further support.

The Government disagrees, contending that *Alvarez* was a "FLSA matter between two private parties not involving the Federal government" and thus "appl[ied] Title 29 Department of Labor Regulations." ECF No. 12 at 22; *see also* ECF No. 15 at 4 (arguing that "*Alvarez*'s ruling is limited to private sector employees and did not examine the continuous workday theory as applie[d] to Federal employees"). The Court finds the Government's reading of *Alvarez* to be unsupported.

As cited in *Alvarez*, the Portal-to-Portal Act excludes compensation for time spent "walking, riding, or traveling *to and from the actual place of performance of the principal activity or activities* which such employee is employed to perform." 29 U.S.C. § 254(a)(1) (emphasis added). Thus, the relevant inquiry under the FLSA is whether the walking time at issue precedes the commencement of the employees' first principal activity. The Supreme Court in *Alvarez* rejected the employer's argument that some activities are "sufficiently 'principal' to be compensable [under § 254(a)(2)], but not sufficiently principal to commence the workday [under § 254(a)(1)]," 546 U.S. at 34, citing its previous opinion in *Steiner*, 350 U.S. at 252–53, which held that indispensable and integral activities are themselves principal activities for purposes of entitling an employee to compensation under the FLSA. The employer in *Alvarez* accordingly could not prevail on the argument that donning equipment was a principal activity for purposes of compensation, but not for purposes of dictating when the workday began, after which walking became compensable. 546 U.S. at 33. The Court ultimately held that:

> [T]he locker rooms where the special safety gear is donned and doffed are the relevant "place of performance" of the principal activity that the employee was

> employed to perform within the meaning of § 4(a)(1). Walking to that place before starting work is excluded from FLSA coverage, but the statutory text does not exclude walking from that place to another area within the plant immediately after the workday has commenced.

*Id.* at 34.

This analysis demonstrates that *Alvarez* based its holding regarding the compensability of walking time in the Portal-to-Portal Act itself, which was specifically enacted to clarify what type of travel time is compensable under the FLSA. *See id.* at 33–34 (interpreting 29 U.S.C. § 254(a)(1) and (2)); *see also id.* at 34 (noting that "[w]alking to [the locker room] before starting work is excluded from FLSA coverage, but *the statutory text* does not exclude walking from that place to another area within the plant immediately after the workday has commenced" (emphasis added)). Consequently, the continuous workday rule is not just supported by an inapplicable DOL regulation, but also the FLSA, as amended by the Portal-to-Portal Act, such that *Alvarez*'s holding has equal force in the federal sector.

To the extent the Supreme Court cited the DOL regulation setting forth the continuous workday rule, it did so solely as additional support for its statutory interpretation. *See id.* at 35 (noting at the end of its statutory analysis section that DOL regulations support the production workers' view that "when donning and doffing of protective gear are compensable activities, they may also define the outer limits of the workday"). Furthermore, even when addressing the DOL regulations, *Alvarez* specifically noted that the DOL's continuous workday rule was promulgated "consistent to [the Supreme Court's] prior decisions *interpreting the FLSA*." *Id.* at 28–29 (emphasis added). This indicates that the continuous workday rule is based in the statute itself rather than the DOL regulation alone.

Additionally, when the employer in *Alvarez* pointed to language in the DOL regulations that purportedly undermined the Court's conclusion that the employees' walking time during the

workday was compensable, the Court dismissed such evidence as unexplained and inconsistent: "Whatever the correct explanation . . . may be, [the employer's cited language] is not sufficient to overcome the clear statements in the text of the regulations that support our holding. *And it surely is not sufficient to overcome the statute itself*, whose meaning is definitively resolved by *Steiner*." *Id.* at 37 (emphasis added). Thus, even when addressing the DOL regulations, the Supreme Court made clear that its holding was based in the FLSA.

As applied here, *Alvarez* indicates that the time Plaintiffs spend passing through the sally port and flipping their accountability chit is plausibly compensable under the continuous workday rule. Indeed, the facts of the case at hand largely mirror those in *Alvarez*. In *Alvarez*, the employees' first principal activity was donning their protective equipment. *See id.* at 32. Similarly, here, Plaintiffs allege—and the Government does not dispute at this stage—that the donning of their duty belts is a principal activity. ECF No. 1 ¶ 20. Then, like the *Alvarez* employees who sought compensation for the time spent walking from the locker rooms to the production floor, 546 U.S. at 32, Plaintiffs seek compensation for the time they spend walking through the sally port and flipping their accountability chit on the way to their post in the secured confines of the Institution, ECF No. 1 ¶ 22. Accordingly, just as the *Alvarez* plaintiffs were entitled to compensation for the walking time that followed the donning of their protective gear, 546 U.S. at 37, Plaintiffs have plausibly alleged entitlement to compensation for the walking time that follows the donning of their duty belts.

In sum, while no party in *Alvarez* disputed the validity of the continuous workday rule as set forth in the DOL regulation, instead disputing how the rule should be interpreted, *see id.* at 29, the Supreme Court nonetheless based its holding in the FLSA itself and appeared to view the DOL's continuous workday rule as a codified extension of its own precedent interpreting the

statute. *See id.* at 28–29 (stating that the Portal-to-Portal Act "[did] not purport to change this Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday,'" and that DOL's continuous workday rule was promulgated "consistent to [the Supreme Court's] prior decisions interpreting the FLSA"); *id.* at 37 (holding that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [§ 254(a) of the Portal-to-Portal Act], and as a result *is covered by FLSA*" (emphasis added)). Accordingly, because *Alvarez* represents the Supreme Court's interpretation of the FLSA, the Court is bound to apply the continuous workday rule. *See Garner v. United States*, 85 Fed. Cl. 756, 759 (2009) ("[B]inding precedent includes the manner in which the Supreme Court and the Federal Circuit interpret statutes and administrative regulations."); *Coltec Indus., Inc. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

2. The Federal Circuit in *Bridges* Did Not Undermine the Supreme Court's Holding in *Alvarez*.

Both parties also claim *Bridges* supports their position. In that case, the Federal Circuit held that correctional officers were not entitled to compensation for travel time between their primary shift at a prison and their secondary shift at a nearby hospital. The Government reads *Bridges* as finding the continuous workday rule inapplicable in the federal sector, as the Circuit relied on 5 C.F.R. § 551.412(b), the OPM regulation asserted by the Government here. ECF No. 12 at 23 (citing *Bridges*, 54 F.4th at 707). In contrast, Plaintiffs believe that *Bridges* "clearly recognized that the continuous workday doctrine applies in the federal sector." ECF No. 11 at 28–29 (citing *Bridges*, 54 F.4th at 706–07). The Court finds that *Bridges* did not go as far as the

Government claims and instead found the continuous workday rule inapplicable based on a very different set of facts. It did not find that the continuous workday rule is categorically inapplicable to federal employers.

In *Bridges*, the Federal Circuit rejected the plaintiff-correctional officers' claim for compensation because it found that their travel time did not constitute travel during a continuous workday. 54 F.4th at 705. In so holding, the Circuit did not find that the continuous workday rule applies differently in the federal sector, as the Government suggests, *see* ECF No. 12 at 22–24. Instead, the Circuit emphasized that "[t]ravel during a 'continuous workday' must [] be compensated under the FLSA." *Bridges*, 54 F.4th at 706–07 (quoting *Alvarez*, 546 U.S. at 37). The problem for the plaintiffs in *Bridges* was their definition of "continuous workday." *See id.* at 707. Though the plaintiffs argued that their two shifts together formed a continuous workday, the Circuit rejected such an interpretation, noting that "Congress, OPM, and the Supreme Court" all define "a 'continuous workday' by the start and stop of 'principal activities.'" *Id.* Thus, as contemplated by § 551.412(b), some workdays are noncontinuous, with two blocks of compensable work each bookended by principal activities that are separated by a non-compensable activity. *Id.* (citing 5 C.F.R. § 551.412(b)).

In a footnote, the Circuit clarified that "OPM and the Supreme Court follow the same definition" of continuous workday. *Id.* at 707 n.5. In referring to the Supreme Court, the Circuit specifically cited *Alvarez*, which, as this Court has already explained, set forth the continuous workday rule as a matter of statutory interpretation. *See id.* (citing *Alvarez*, 546 U.S. at 37). The Circuit's repeated citation to *Alvarez* and its affirmance that the OPM regulations do not contradict the Supreme Court's interpretation of "continuous workday" indicate that the Circuit did not find the continuous workday rule inapplicable, or differently applicable, in the federal sector. *See*

*Stroup*, 180 Fed. Cl. at 357 (observing that *Bridges* "directly adopts *Alvarez*'s interpretation of 'continuous workday' for federal employees").

Rather, the Circuit explained why the continuous workday rule did not apply under *Bridges*'s unique facts. *See* 54 F.4th at 708 ("[T]he officers' travel between shifts does not occur during a 'continuous workday' as defined by both OPM and DOL."). The officers' travel in *Bridges* was simply nearer to what Congress intended to exclude from the FLSA through the Portal-to-Portal Act—travel to and from the worksite. *See id.* at 706 ("The Portal-to-Portal Act of 1947 indicates that the officers' travel in this case is at least one step removed from their principal activities."); *id.* at 708 (finding that the officers essentially sought compensation for time commuting, which is "precisely contrary to the Portal-to-Portal Act's instruction that commuting time . . . is not covered by the FLSA"). Because employees are generally not entitled to compensation for travel time to and from the places where they perform their principal activities, the plaintiffs' travel time between one shift at the prison and a separate second shift at the hospital was not compensable pursuant to the Portal-to-Portal Act. *See id.* at 706.

In sum, the Government points to no language in *Bridges* rejecting or differentiating the applicability of the continuous workday rule in the federal sector.[5] Instead, in citing *Alvarez*, the Federal Circuit in *Bridges* clearly contemplated circumstances in which the continuous workday rule applies such that travel or walking time is compensable—this was the case in *Alvarez*, just as

[5] In its reply, the Government emphasizes that "the Federal Circuit [in *Bridges*] affirmed [the lower court's] decision in its entirety" and notes that the lower court rejected the plaintiffs' "continued workday" theory based on 5 C.F.R. § 551.412(b). ECF No. 12 at 22. The Government's citation to the Court of Federal Claims' opinion is unconvincing, as it is the reasoning of the Federal Circuit, and not the Court of Federal Claims, that is binding. *See W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994) (noting that Court of Federal Claims decisions, "while persuasive, do not set binding precedent for separate and distinct cases in that court").

it is here. At oral argument, the Government's counsel contended that "if the Federal Circuit meant for the continuous workday [rule] to apply . . . it would have been a bit more clear." Oral Arg. Tr. at 56:10–13, ECF No. 20. The Court finds the converse to be true—if the Federal Circuit did not read *Alvarez* as being authoritative in the context of federal employment, it would have been much clearer that the continuous workday rule does not apply. Rather than doing so, the Federal Circuit explained that the plaintiffs' claim simply did not involve a continuous workday. *See Bridges*, 54 F.4th at 707–08.

Looking at the facts of both *Bridges* and *Alvarez*, it is clear that the case at hand resembles the latter far more than the former. Plaintiffs are not seeking compensation for travel time between exiting the prison at the end of their first shift and arriving at a new location for their second shift. Instead, Plaintiffs seek compensation for the time they spend walking from the area of FCI Fort Dix where they don their duty belts, through the controlled entrance of the sally port, and into the secured confines of the Institution, all during one continuous shift. *See Stroup*, 180 Fed. Cl. at 356 (similarly distinguishing *Bridges*). Because this walking time is much more akin to the employees' walk from the locker rooms to the production floor in *Alvarez*, Plaintiffs' claim for compensation survives the Government's Motion to Dismiss.

3. OPM Regulation 5 C.F.R. § 551.412 Does Not Indicate That the Continuous Workday Rule is Inapplicable, and to the Extent It Can Be Read in Such a Manner, It Would Conflict With the FLSA.

The Government argues that "OPM regulations exclude time spent performing preliminary and postliminary activities from compensable hours of work 'even if it occurs between periods of activity that are compensable as hours of work.'" ECF No. 12 at 21 (quoting 5 C.F.R. § 551.412(b)). Thus, the Government contends that the time officers spend passing through the sally port "is not compensable even if a compensable activity precedes it." *Id.* Instead, the Government urges the Court to review each pre-shift activity individually, determining whether it

is a principal activity itself or integral and indispensable to a principal activity. *See* ECF No. 20 at 21:6–11, 18–22; *id.* at 25:12–16.

The Court disagrees with the Government's broad reading of § 551.412(b). Most importantly, assuming the Government's reading of § 551.412(b) is correct, the regulation conflicts with the Supreme Court's interpretation of the FLSA in *Alvarez*. *See Doe No. 1 v. United States*, 129 F.4th 1362, 1367 (Fed. Cir. 2025) ("OPM regulations pursuant to the FLSA are valid if they are consistent with the statute and, to the extent they differ from DOL regulations, any differences are justified by legitimate reasons."); *Stroup*, 180 Fed. Cl. at 358 ("To the extent that [§ 551.412(b)] contradicts the continuous workday holding in *Alvarez*, it is invalid.").[6] Because the Court has determined that the continuous workday rule is based in the FLSA itself, *see supra* § III.C.1, it cannot be undermined or overridden by an OPM regulation. The regulation should thus be read more narrowly. As the Federal Circuit held in *Bridges*, at the very least, § 551.412(b) properly prevents employees from seeking compensation for travel time that is bracketed by two continuous workdays. *See* 54 F.4th at 707 & n.5.

The Government's interpretation of § 551.412(b) would also make administration of the FLSA much more difficult, if not impracticable, as federal employers would be expected to determine whether each individual pre- or post-liminary activity is compensable and how much time the employee spends on that discrete activity. To illustrate, a federal employer could be

[6] In addressing *Stroup*, the Government argues that the court "fundamentally undermine[d] OPM's independent statutory authority" by applying the continuous workday rule as it was set forth in *Alvarez*. ECF No. 15 at 4. OPM's exercise of its authority, however, must be consistent with the statute. *Doe No. 1*, 129 F.4th at 1367. As the court in *Stroup* correctly recognized, 180 Fed. Cl. at 357–58, *Alvarez* made clear that the continuous workday rule is supported by the Supreme Court's longstanding interpretation of the FLSA and Portal-to-Portal Act. *See* 546 U.S. at 28–29. Thus, neither *Stroup* nor this Court "undermine OPM's authority" in adhering to the Supreme Court's statutory interpretation. *See Garner*, 85 Fed. Cl. at 759.

required to pay overtime compensation for the donning of equipment, but not the walk through the sally port, then required to pay for the walk through the prison, but not for the exchange of information with the outgoing officer. *See* ECF No. 20 at 25:17–26:23. As the court noted in *Stroup*, the Government's interpretation of a "continuous workday" thus illogically indicates that "five principal activities separated by non-principal activities, no matter how trivial, would transform into five *discontinuous* workdays." 180 Fed. Cl. at 356. The Court does not find this to be the best reading of the OPM regulation or the FLSA itself. The Government's attempt to dismiss Plaintiffs' FLSA claim based on the cited OPM regulation is consequently unavailing.

To be sure, the Court of Federal Claims has split on the question of whether the continuous workday rule applies in FLSA cases involving federal employees. Like this Court, a number of judges have found that the continuous workday rule is equally applicable in the federal sector. *See Stroup*, 180 Fed. Cl. at 357 ("Ultimately, *Bridges* confirms the continuous workday rule applies to federal workers . . . ."); *Adegbite*, 156 Fed. Cl. at 510 (noting that "all the intermediary activities" alleged by the plaintiffs "would likely be compensable under the continuous workday rule"); *Alexander*, 156 Fed. Cl. at 531 (similar); *see also Adair*, 2021 WL 6163407, at *6 n.3 (noting that the continuous workday rule is applicable in the federal sector); *Alvarez*, 2021 WL 6163405, at *6 n.4 (same).

Other judges have taken the view that the continuous workday rule either does not apply or applies differently in the federal sector.[7] *See Aitken v. United States*, 162 Fed. Cl. 356, 368–69 (2022) (holding that "the continuous workday rule does not apply" (citing *Bridges v. United States*, 156 Fed. Cl. 129, 134 (2021))); *Baytos*, 175 Fed. Cl. at 368–69 (finding that the plaintiffs'

[7] With the exception of *Baytos*, 175 Fed. Cl. 360, the cited opinions were filed before the Federal Circuit issued its holding in *Bridges*, and thus they relied on the Court of Federal Claims' opinion in that case.

"arguments regarding compensability based on the continuous workday doctrine fail as a matter of law" because the continuous workday rule does not apply to federal employees in the same way it does to employees in the private sector); *Medrano*, 159 Fed. Cl. at 544 n.11 (stating that "the continuous workday rule does not apply to federal employees in the same way that it does to other workers"); *Alkire*, 158 Fed. Cl. at 396 (same). In a post-trial opinion, the *Aitken* court addressed the Federal Circuit's decision in *Bridges*, emphasizing that the Circuit "rejected the inference . . . that the 'continuous workday' includes everything between the first and last principal activity in some generally work-related period." *Aitken v. United States*, 172 Fed. Cl. 377, 407–08 (2024). Though acknowledging that the factual scenario in *Bridges* differed from that in *Aitken*, where officers were claiming compensation for activities that took place in one location prior to the start of their scheduled shift, *Aitken* found the reasoning of *Bridges* "no less applicable." *Id.* at 408. Thus, the court held that "if any of [the officers'] activities are not independently compensable as principal activities, they do not become compensable merely because they are 'book-ended by principal activities.'" *Id.* (quoting *Bridges*, 54 F.4th at 707); *see also* ECF No. 12 at 24 (noting that *Aitken* involved facts identical to those at hand and still followed *Bridges*).

This Court respectfully disagrees. Dismissing the applicability of the continuous workday rule in the federal sector is too broad a reading of *Bridges*, and one that fails to give sufficient respect to the Supreme Court's opinion in *Alvarez*, which the *Bridges* court made sure to clarify as being consistent with its opinion. *See supra* § III.C.2. Contrary to the Government's argument and the holding in *Aitken*, the differing facts in the case at hand are significant, and their similarity to *Alvarez* compel the Court to find that Plaintiffs have plausibly pled the applicability of the continuous workday rule.

Particularly at the dismissal stage, where the Court must assume Plaintiffs' alleged facts

are true and where numerous questions remain to be fleshed out in discovery as to whether/how the continuous workday rule will apply in the context of this specific case, the Government has not demonstrated that Plaintiffs' claim fails to meet the pleading standard. On the face of the Complaint, the Court finds it at least plausible that Plaintiffs are entitled to the compensation they seek, considering that the officers pass through the sally port only after they have donned their duty belts, which, for the purposes of this motion, the Court assumes is a principal activity that commences the workday.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss Part of the Complaint (ECF No. 10) is **DENIED** and Plaintiffs' Motions for Leave to File Notice of Supplemental Authority are **GRANTED** (ECF Nos. 13, 14). Consistent with RCFC 12(a)(4)(A)(i), the Government shall file its responsive pleading **by no later than September 17, 2026**.

**SO ORDERED**.

Dated: September 3, 2026

*/s/ Kathryn C. Davis*
KATHRYN C. DAVIS
Judge